CALDWELL ET AL., APPELLEES, *v.* GOLDBERG ET AL., APPELLANTS.

(No. 74-607—Decided July 2, 1975.)

*Mr. Kenneth M. Robbins,* for appellees.

*Messrs. Margulis, Gussler, Hall & Hosterman, Mr. Leo J. Hall* and *Mr. John W. Hosterman,* for appellants.

CELEBREZZE, J. The determinative issue in the case before us is whether the drainage ditch which traverses the Caldwell and Timmons lands is a public or a private ditch.

R. C. Chapter 6131, titled "Single County Ditches," establishes procedures for improving ditches, drains and watercourses for drainage purposes by the board of county

commissioners. Appellants argue that the ditch is a public watercourse by operation of R. C. 6131.59, which provides:

"When an improvement consisting of a ditch, drain, or watercourse has become the outlet of agricultural drainage, and has been established and constructed, or used, for seven years or more, it shall be deemed to be a public watercourse notwithstanding any error, defect, or irregularity in the location, establishment, or construction thereof, and the public shall have and possess in and to any such watercourse which has thus been constructed, or used, for seven years, the rights and privileges which relate to and pertain to natural watercourses, but the same shall be subject to any improvement upon petition as provided in Sections 6131.01 to 6131.64, inclusive, of the Revised Code."

Although the ditch in question has been an outlet of agricultural drainage for more than seven years, it was not established by action of the county commissioners pursuant to the provisions of R. C. Chapter 6131, nor was it dedicated to public use by appellees. We agree with appellees and the Court of Appeals that R. C. 6131.59 must be read to operate in conjunction with the entire chapter, so that the ditch built by appellees, with some federal aid, remains a private ditch.

Appellants argue that the ditch is a public watercourse because it follows the path of natural drainage of the land. However, evidence adduced at trial showed that surface water in the area was intermittent, and the ditch was constructed to lower the subterranean water level so that the land could be farmed. Diffuse and intermittent flow of water over lowlands does not qualify as a public watercourse without more evidence of a stream bed or watercourse of some sort. From appellants' argument, any surface run-off which naturally flows toward the lowest points in the area, would establish a public watercourse.

After the ditch was found to be private, the Court of Appeals determined that the flow of water or "effluent in question is *not being drained naturally* onto appellants' [appellees'] land, but is to be piped from the sewage plant

to the state highway land for the purpose of discharging onto the land of appellants [appellees]. * * * See *Johnson v. Miller*, 15 Ohio App. 2d 233.'' (Emphasis added.)

The Court of Appeals thus differentiated between the natural flow which must be accepted by a servient estate and the unusual flow which will be caused by operation of the sewage plant.* After establishing that the casting of these waters onto appellees' land was a trespass, the Court of Appeals determined that the actions of appellants would amount to a continuing trespass for which there existed no adequate remedy at law.

That court then cited the third paragraph of the syllabus in *Lembeck* v. *Nye* (1890), 47 Ohio St. 336, which provides:

''Where numerous acts are being committed, and their continuance threatened, under a claim of right, by one person on the land of another, which acts constitute trespass, and the injury resulting from each act is, or would be, trifling in amount as compared with the expense of prosecuting actions at law to recover damages therefore, the owner may resort, in the first instance, to a court of equity for appropriate relief.''

The Court of Appeals reversed the Court of Common Pleas and granted a permanent injunction in favor of appellees.

Appellants argue that a balancing test should have been applied in determining whether to grant the injunction, and that when their expense in constructing the sewage disposal plant is compared to the trifling and speculative damage to appellees' land, the injunction should not have been granted.

However, we agree with the Court of Appeals. The water which will flow through appellees' land may well de-

---

*Appellants argue that no damage was shown by appellees, since they did not prove that more water would flow across their land.

However, the plant was described as a "40,000 gallon per day plant," and even if it did not operate to full capacity and all that goes in will not come out, a substantial amount of water will be flowing into the ditch.

feat the very purpose for which the ditch was constructed (see footnote), and appellees have no adequate remedy at law to recover for such a damage, which, while real, is difficult to measure.

In addition, appellants may, if they choose, petition the county commissioners, pursuant to R. C. 6131.04, to construct an improvement on the land owned by them, since a sewage disposal system such as they have constructed might be deemed to be conducive to the public welfare. The provisions of R. C. Chapter 6131 then provide for assessment of the cost of the improvement to landowners who are benefited and payment to those who are injured. So appellants' injury need not be as severe as they here allege.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.