**RITCHHART et al., Appellees,**

v.

**GLEASON et al., Appellants.**

[Cite as *Ritchhart v. Gleason* (1996), 109 Ohio App.3d 652.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 95CA2092.

Decided March 5, 1996.

*Samuels & Northrop Co., L.P.A.,* and *Joseph M. Reidy,* for appellees.

*Richard M. Wallar,* for appellants.

KLINE, Judge.

Plaintiffs-appellees, Wayne B. Ritchhart and Renick R. Ritchhart, filed a complaint against defendants-appellants, Gary L. Gleason and Elaine Gleason, seeking to permanently enjoin appellants from discharging effluent from appellants' waste water treatment plant into a ditch[1] traversing appellees' property. The Ross County Court of Common Pleas granted the injunction and appellants appeal from that judgment.

Appellants assign the following errors:

"I.   The trial court's finding that an 'intermittent stream' was a 'private ditch' was against the manifest weight of the evidence.

"II.   The trial court erred in granting plaintiffs a temporary and permanent injunction because the evidence did not establish any harm to plaintiffs and the court applied the wrong standard to trespass since the appellants have riparian

---

1.   The ditch has been variously called, *inter alia,* an intermittent stream, a channel, and a watercourse.   For simplicity, we will identify it as a ditch throughout our explanation of the facts of this case.

rights to discharge water into an 'intermittent stream' running through the plaintiffs' property.

"III. Appellants have been unconstitutionally deprived of their property rights by the court's denial of due process, and denied equal protection of the laws in denying them the right to exercise their right to discharge properly treated effluent into an intermittent stream which is both waters of the United States and waters of the state of Ohio."

Appellants purchased the land adjacent to appellees' property with the intention of establishing a mobile home park. To further their plan, appellants borrowed $480,000 to purchase and install a waste water treatment plant to treat the sewage from the mobile home park. Appellants applied for and received all of the applicable permits from the Ohio Environmental Protection Agency ("OEPA") necessary to operate this plant.[2] Appellants proposed to discharge the effluent from this waste water treatment plant through a pipe into a ditch that starts above their property, traverses their property and appellees' property, and eventually runs into Deer Creek. The ditch, which lies within fifty feet of appellees' house, has been classified as an intermittent stream by the United States Geological Survey and is dry ninety percent of the year.

Appellees alleged that the flow of effluent through the ditch would constitute a nuisance and a trespass upon their private property. They contended that the effluent would not completely traverse their property due to the lack of a natural water flow but instead would settle in their ditch causing sewage constituents to accumulate on their land. Appellees further claimed that the effluent would erode and destroy the ditch. Finally, appellees asserted that they have no adequate remedy at law to abate the conditions that would be created by appellants, and that they would suffer irreparable harm should appellants be permitted to operate their waste water treatment plan in the manner appellants have proposed.

The trial court concluded that the ditch was a private ditch owned by appellees and that the effluent would constitute a trespass on appellees' property. The trial court granted a temporary injunction and later a permanent injunction preventing appellants from discharging the effluent from the waste water treatment plant into appellees' ditch.

In their first assignment of error, appellants assert that the trial court's finding that the ditch traversing appellees' property was a "private ditch" rather than an "intermittent stream" is against the manifest weight of the evidence. The

---

**2.** Appellees challenged the issuance of the permits by the OEPA during the permitting process. Their complaint in the case *sub judice* does not concern those permits or the quality of the effluent that would be discharged from the waste water treatment plant.

Supreme Court of Ohio has held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. When conducting this review, an appellate court must not reweigh the evidence or substitute its judgment for that of the trial court when there exists competent, credible evidence supporting the trial court's findings of fact and conclusions of law. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

■ This court must therefore determine whether there exists competent, credible evidence to support the trial court's finding that the channel across appellees' property is a private ditch. The distinction between an intermittent stream, which is presumably public, and a private ditch is significant because it determines appellants' right to use the channel.[3] In *Caldwell v. Goldberg* (1975), 43 Ohio St.2d 48, 72 O.O.2d 28, 330 N.E.2d 694, the Supreme Court of Ohio held that "[w]here the owner of a private sewage disposal plant threatens, under claim of right, to cast effluent into a ditch which flows through private property and is not a public watercourse, such action would be a continuing trespass which may be enjoined." *Id.* at paragraph two of the syllabus. The Supreme Court identified the determinative issue as whether the drainage ditch traversing the parties' land was a public or private ditch. *Id.*, 43 Ohio St.2d at 49, 72 O.O.2d at 28–29, 330 N.E.2d at 695.

The difficulty in the present case lies in the fact that little evidence exists that might conclusively show that the ditch is either public or private. All parties seem to agree that the ditch is part of the drainage pattern for the area's surface water. Furthermore, several witnesses identified the ditch as a watercourse[4]

---

**3.** A landowner has certain rights to the use of natural watercourses that pass through his or her land. These rights are generally called riparian water rights and include the right to utilize the water for all useful purposes so long as other riparian proprietors are not damaged. 92 Ohio Jurisprudence 3d (1989) 494, Water, Section 157. A landowner is not entitled to these rights, however, if the water is part of a private ditch or a private waterway. A landowner may not, however, similarly use another person's private property, which may include a private ditch.

**4.** A "watercourse" has been defined as follows:

"A water course is a stream usually flowing in a particular direction in a definite channel having a bed, banks or sides and discharging into some other stream or body of water. It need not flow continuously, and may some times be dry or the volume of such water course

that carries rain, snow, or other runoff from higher elevations to Deer Creek. However, despite the fact that evidence tended to show that water is prevalent in the ditch where it crosses other properties, the evidence was clear that water rarely runs through the ditch on appellees' property.

■ There was little guidance available to the trial court in determining whether the ditch on appellees' land is public or private. *Caldwell v. Goldberg, supra,* provides that "[d]iffuse and intermittent flow of water over lowlands does not qualify as a public watercourse without more evidence of a stream bed or watercourse of some sort." *Id.,* 43 Ohio St.2d at 50, 72 O.O.2d at 29, 330 N.E.2d at 696. The Cuyahoga County Court of Common Pleas, one of the few courts to cite *Caldwell,* stated as follows: "As in the *Caldwell* case, the ditch in this case carries intermittent surface water, and from the court's observation can under no stretch of the imagination qualify as a stream bed or watercourse." *Grigger v. N. Royalton* (1977), 59 Ohio Misc. 103, 110, 11 O.O.3d 21, 25, 394 N.E.2d 353, 358. Although appellants argue that there was in fact evidence of a stream bed or watercourse, the credibility of that testimony is an issue to be determined by the trial court. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276–1277.

■ The trial court referred to R.C. 6131.59, which provides that a ditch becomes a public watercourse when it has been improved pursuant to R.C. Chapter 6131. Although a property owner adjacent to appellees has improved his portion of the ditch, all parties agree that appellees' ditch has not been so improved. "A drainage ditch located on private property does not become a public watercourse by reason of R.C. 6131.59, unless it was established or improved pursuant to provisions of R.C. Chapter 6131." *Caldwell v. Goldberg,* 43 Ohio St.2d 48, 72 O.O.2d 28, 330 N.E.2d 694, paragraph one of the syllabus.

■ After considering all of the evidence, the trial court concluded as follows:

"3. Although the ditch in question may be 'waters of the United States' and therefore subject to the jurisdiction of the U.S. Army Corps of Engineers over the dredging or filling of said ditch, this does not change a private stream or ditch into a public stream or ditch.[5]

---

may some times be augmented by freshets or water backed into it from a lake or bay or other extraordinary causes; but so long as it resumes its flow in a definite course in a recognized channel and between recognized banks, such stream constitutes a watercourse." *E. Bay Sporting Club v. Miller* (1928), 118 Ohio St. 360, 161 N.E. 12, paragraph three of the syllabus.

This definition was approved in *Mentor Harbor Yachting Club v. Mentor Lagoons, Inc.* (1959), 170 Ohio St. 193, 197–198, 10 O.O.2d 131, 133–134, 163 N.E.2d 373, 376–377. It is not clear that the ditch in the case *sub judice* satisfies this definition.

5. Appellants emphasized that appellees' ditch qualified as "waters of the state":

"4. The evidence does not show that the ditch in question has been established or improved pursuant to the provisions of O.R.C. 6131. or dedicated by its owners for public use. Accordingly, the ditch on the Ritchhart property which is the subject of this action, is a 'private' ditch."

Competent, credible evidence exists to support the trial court's findings. Several photographs of the area and the ditch were submitted to the court, all showing dry expanses of grass, woods, or soil. Testimony indicated that water only flows in the ditch after it has rained at least two inches in a short period of time.[6] Additionally, witnesses testified that the ditch has never been improved nor has it been dedicated to public use. Affording the proper deference to the findings of the trial court judge, who observed the witnesses and their demeanor and was thus able to determine the credibility of the proffered testimony, we must conclude that the trial court's determination that the channel is a private ditch is not against the manifest weight of the evidence. Accordingly, appellants' first assignment of error is overruled.

In their second assignment of error, appellants contend that the trial court erred by granting the injunction because appellants' riparian rights entitle them to discharge water into an intermittent stream.[7] Appellants argue that the trial court should have applied riparian water law rather than *Caldwell v. Goldberg* in its determination of this case.

The cases cited by appellants to support their argument that they possess riparian water rights are inapplicable because they concern the flow of surface water into its natural outlet rather than effluent discharged through a pipe into a ditch or natural waterway.[8] The trial court first found that appellants would be

---

" 'Waters of the state' means all streams, lakes, ponds, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems, and all other bodies or accumulations of water, surface and underground, natural or artificial, regardless of the depth of the strata in which underground water is located, which are situated wholly or partly within, or border upon, this state, or are within its jurisdiction, except those private waters which do not combine or effect a junction with natural surface or underground waters." R.C. 6111.01(H).
  This definition of "waters of the state" does not, however, address whether a particular body of water or watercourse is public or private. Cf. *Ohio Water Serv. Co. v. Ressler* (1962), 173 Ohio St. 33, 18 O.O.2d 243, 180 N.E.2d 2, paragraph two of the syllabus, where the Supreme Court of Ohio held that the term "waters of the state" in R.C. 1533.32, regarding fishing licenses, means public waters.

6. For a similar factual situation, see *Grigger v. N. Royalton*, 59 Ohio Misc. at 104, 11 O.O.3d at 21–22, 394 N.E.2d at 354, where the court found that the ditch was not a public waterway.

7. See fn. 3, *supra*.

8. A landowner has certain rights to manage the surface waters that naturally spread over the land owner's property:
  "In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as

discharging effluent into appellees' private ditch and then determined that *Caldwell v. Goldberg, supra,* is directly applicable to this situation. It was therefore unnecessary for the trial court to consider alternative water rights doctrines. The trial court concluded that the effluent would constitute a continuing trespass on appellees' property pursuant to *Caldwell v. Goldberg,* 43 Ohio St.2d 48, 72 O.O.2d 28, 330 N.E.2d 694, paragraph two of the syllabus. Although this court questions the workability of conditioning the finding of a trespass on the absence of a public watercourse when the definitions of the terms "private ditch" and "public watercourse" are so equivocal, we cannot find error in the application of *Caldwell v. Goldberg* to the facts of this case.[9] *Caldwell v. Goldberg* has not been overruled or modified and consequently must be followed. This court finds that the trial court applied the proper law in its consideration of this case.

Appellants also argue in their second assignment of error that the trial court erred by granting the permanent injunction because appellees failed to show that they would be harmed by the discharge. A trial court has broad discretion to grant injunctive relief, and an appellate court will not reverse absent an abuse of that discretion. *Fodor v. First Natl. Supermarkets, Inc.* (1992), 63 Ohio St.3d 489, 495, 589 N.E.2d 17, 21–22. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment

---

he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable." *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St.2d 55, 16 O.O.3d 41, 402 N.E.2d 1196, syllabus. See, also, *Mason v. Commrs. of Fulton Cty.* (1909), 80 Ohio St. 151, 88 N.E. 401, syllabus. The discharge from appellants' water treatment plant is not surface water.

9. The trial court expressed its concerns about implementing *Caldwell:*

"The court is not unmindful of the substantial investment that the defendants have made in their property. However, the court believes that under the *Caldwell* case that that is not a matter that the court may take into account in making its determination in this matter. * * * Quite frankly, the court feels that *Caldwell* is a harsh master and compels a harsh result. * * * Perhaps, if it gets to that point, the Ohio Supreme Court may wish to reexamine the rule announced in *Caldwell.* That decision is almost 20 years old now and there has been, I feel, a substantial change in terms of development of our rural areas in this state. However, * * * I am not the legislature of the state of Ohio nor am I the Supreme Court of the state of Ohio. * * * Therefore, I feel that I must apply *Caldwell* in this case and grant the plaintiff's requested injunctive relief." See, also, *Warren v. Jemo Assoc., Inc.* (Dec. 1, 1982), Athens App. No. 1104, unreported, 1982 WL 3596 (favoring a "substantial injury" test rather than applying *Caldwell v. Goldberg* ).

for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309.

Appellees presented evidence that the waste water treatment plant is designed to discharge a maximum of twenty-six thousand gallons of treated sewage per day. Appellees also introduced testimony that effluent will cause minimal erosion of the ditch and sewage constituents will settle out on appellees' property. These occurrences constitute an unauthorized entry upon appellees' land, *Brown v. Scioto Cty. Commrs.* (1993), 87 Ohio App.3d 704, 716, 622 N.E.2d 1153, 1161, and qualify as a continuing trespass pursuant to *Caldwell v. Goldberg, supra.* Furthermore, appellees presented testimony showing that they would be harmed by the damage this trespass would cause to their private ditch. The trial court also found that appellees have no adequate remedy at law to recover for the damage to their ditch, which would be extremely difficult to measure. See *Grigger v. N. Royalton,* 59 Ohio Misc. at 112, 11 O.O.3d at 26, 394 N.E.2d at 358–359.

The trial court followed *Lembeck v. Nye* (1890), 47 Ohio St. 336, 24 N.E. 686, paragraph three of the syllabus, cited by *Caldwell v. Goldberg,* 43 Ohio St.2d at 51, 72 O.O.2d at 29, 330 N.E.2d at 696, which provides as follows:

"Where numerous acts are being committed, and their continuance threatened, under a claim of right, by one person on the land of another, which acts constitute trespass, and the injury resulting from each act is, or would be, trifling in amount as compared with the expense of prosecuting actions at law to recover damages therefor, the owner may resort, in the first instance, to a court of equity for appropriate relief."

We find that the trial court did not abuse its discretion, and we overrule appellants' second assignment of error.[10]

Finally, in appellants' third assignment of error, appellants claim that they were unconstitutionally deprived of their due process and equal protection rights, because there is an existing mobile home park downstream from appellees' property that is discharging its treated waste water into the intermittent stream channel and because appellants have been denied their property rights. It appears from the record, however, that appellants failed to raise these issues in the lower court.[11] "Constitutional rights may be lost as finally as any others by a

---

10. Appellants do not argue on appeal that the financial harm caused to them by the injunction outweighs the benefit of the injunction to appellees.

11. During one argument to the court, appellants' counsel stated the following:

"Notwithstanding that, I have to represent my clients. They need to be represented and it's unfair to say well yeah, we took his deposition, Mr. Wallar. Let's deprive them of their

failure to assert them at the proper time." *State v. Childs* (1968), 14 Ohio St.2d 56, 62, 43 O.O.2d 119, 123, 236 N.E.2d 545, 549. See, also, *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524, 526–527. Accordingly, appellants have waived the presentation of these issues in this court, and their third assignment of error is overruled.

In conclusion, competent, credible evidence exists to support the trial court's finding that the ditch is appellees' private property, and this court cannot find that the trial court's judgment is against the manifest weight of the evidence. Furthermore, the trial court applied the appropriate law to the facts of this case. Having overruled all of appellants' assignments of errors, we affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE, P.J., and HARSHA, J., concur.

---

property rights, their livelihood, deny them equal protection of the laws because Mr. Pauley was unavailable for this day * * *."
  This is the only reference to appellants' constitutional rights in the record and is insufficient to be considered raising the issues in the lower court.