[Cite as *Economus v. Independence*, 2020-Ohio-266.]

## COURT OF APPEALS OF OHIO

## COUNTY OF CUYAHOGA
### EIGHTH APPELLATE DISTRICT

LINDA ECONOMUS, ET AL.,    :

    Plaintiffs-Appellants,    :

                                        No. 107713

    v.    :

CITY OF INDEPENDENCE, ET AL.,    :

    Defendants-Appellees.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** January 30, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-883646

---

### *Appearances:*

Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube; Bevan & Associates, L.P.A., Inc., and Thomas W. Bevan, *for appellants*.

Gregory J. O'Brien, City of Independence Law Director, and William A. Doyle, Assistant Law Director, *for appellees*.

SEAN C. GALLAGHER, J.:

{¶ 1} Plaintiffs-appellants, Linda and Dale Economus (collectively "plaintiffs"), appeal the trial court's order granting summary judgment to

defendants-appellees, the city of Independence and Donald J. Ramm ("Ramm"), the city engineer. Plaintiffs also appeal the trial court's denial of their claim for punitive damages and attorney fees. Upon review, we reverse the trial court's decision to grant summary judgment in favor of the city of Independence on plaintiffs' claim for negligent failure to maintain the city's storm sewer system; we affirm the decision to grant summary judgment in favor of Ramm on plaintiffs' claim of individual liability for recklessness and bad faith; we affirm the denial of the claim for punitive damages and attorney fees; and we remand the case to the trial court.

## I.    Factual Background and Procedural History

{¶ 2}    In 1989, plaintiffs bought two empty sublots (sublot Nos. 5 and 6) in the Valley Woods subdivision in Independence, Ohio, from the Valley Woods Partnership. According to plaintiffs, there were not any houses fully constructed in the subdivision at the time they purchased the sublots and they were one of the first occupants in the subdivision. Plaintiffs built a home on sublot No. 6 and sold a portion of sublot No. 5 to Linda's parents.

{¶ 3}    At the time of purchase, plaintiffs were aware of the existence of a retention basin on their property, over which the city possesses a "retention basin easement." They also were aware of the existence of a creek, which flows from points upstream and also runs through the rear yards of several sublots in the subdivision and into the retention basin on plaintiffs' property.

{¶ 4}    The purchase agreement, which plaintiffs signed and entered into on April 11, 1989, contains the following clause with respect to the creek:

It is understood that if a creek affects the subject property and the property may be subject to erosion and drainage problems as a result and the property owner by the acceptance hereof hereby acknowledges same and assumes the risk thereof and agrees to indemnify and hold the City and Seller harmless from any and all claims for erosion and drainage from said creek.

{¶ 5} The deed transferring the property from Valley Woods Limited Partnership to plaintiffs included a legal description of the sublots as well as a restriction stating that the property was "subject to a retention basin easement and a utility easement as shown on the dedicated plat." The plat map contains a "Creek Acceptance" provision, which states as follows:

It is understood that a creek traverses this subdivision and these properties may be subject to erosion and drainage problems as a result, and all property owners, their successors, and assigns by the acceptance hereof hereby acknowledges the same, and assumes the risk thereof, and agree to indemnify and hold the city of Independence harmless from any and all claims for erosion and drainage from said creek.

The plat map also contains the following note:

There is a retention basin-lake for the subdivision on Sublot No. 6 as shown hereon and the primary maintenance responsibility is hereby placed on the owner of Sublot No. 6. In the event that the owner fails to properly maintain the retention basin-lake the city of Independence is hereby granted easement right to come upon said property to perform same.

Both the deed and plat map were recorded with the Cuyahoga County Recorder's office on May 16, 1989, and May 17, 1989.

{¶ 6} During his deposition, Dale Economus stated that he did not see the plat map before purchasing the property, but he admitted that he did not ask to see

it either.  He stated that he received a copy of the deed after purchasing the property and after it was recorded.

{¶ 7}  The city possesses a "storm sewer-drainage ditch easement" over the area the creek traverses in the subdivision.  Additionally, there is a storm sewer in the subdivision that runs from southwest to northeast under Valley Woods Drive. The storm sewer outlets at a headwall, and storm water is directed into the retention basin through a storm sewer pipe from the city's right-of-way.  Thus, the retention basin accepts storm water from two sources — the waterway flowing through the storm-sewer drainage ditch easement, as well as from the storm sewer on Valley Woods Drive.  The retention basin has an inflow pipe coming from the storm sewer on Valley Woods Drive, and there is an outflow pipe that allows water to flow out of the retention basin when the water level gets too high.  The retention basin needs to be dredged whenever it becomes obvious that it is filling with sediment and debris.

{¶ 8}  Between June 1993 and September 1996, Dale Economus sent numerous letters to the city regarding the retention basin and the debris accumulating in the basin.  In many of those letters, he indicated that the retention basin would need to be dredged and stated that he believed it was the city's responsibility to pay for the dredging.

{¶ 9}  The city has dredged the retention basin more than once, and as many as three times, in the past.  In June 1996 and March 1999, Independence Excavating issued a "pond-cleaning proposal" for work required to clean "the pond located off Valley Woods Drive."  In May 2007, Geotech Services performed work on the

retention basin. The proposal for the work stated that Geotech was to "clean out debris and restore eroded embankment caused by storm damage[,] * * * remov[e] washed in sediment and plac[e] it on the embankment[, and] remov[e] trees and brush that fell into stream." In June 2007, Geotech Services sent the city an invoice for $5,600 for "Emergency storm repair Economus retention basin," which the city paid on July 5, 2007.

{¶ 10} On May 12, 2014, a severe rainstorm occurred. According to the plaintiffs' complaint, "the ability of the retention basin to hold storm water had been severely compromised" and "the force of the water entering the retention basin was so great, damage was done to Plaintiff's property."

{¶ 11} Shortly after the rainstorm, Ramm and Dave Snyderburn, on behalf of the city, went out to the property to inspect the basin and the damage to plaintiffs' property. Snyderburn said that there were obstructions in the storm sewer-drainage ditch easement area, but that the obstructions were typical to any creek. After walking around the property, Snyderburn and Ramm met with plaintiffs about the sediment buildup in the retention basin. During that meeting, Snyderburn told plaintiffs that it was a "bad time" to request help from the city. Snyderburn said Ramm and he relayed information from the meeting to the mayor and his administration.

{¶ 12} On June 4, 2014, Dale Economus sent a letter to Ramm, stating that his property was damaged as a result of "significant additional sediment deposits" and the undermining of the basin's retaining wall. He stated that the basin would

need to be dredged again and that he was contacting Independence Excavating after failing to receive a response from the city.

{¶ 13} Plaintiffs ultimately hired Independence Excavating to replace the retaining wall. According to plaintiffs, Independence Excavating charged them $18,500 for the work.[1]

{¶ 14} In September 2015, plaintiffs filed a complaint in Cuyahoga C.P. No. CV-15-851761. Plaintiffs voluntarily dismissed that complaint without prejudice on September 1, 2016. In July 2017, plaintiffs refiled their complaint. Plaintiffs asserted claims for negligence against both the city of Independence and Ramm, and a claim of trespass against the city. Among other allegations, plaintiffs asserted as follows:

> Plaintiffs have informed the City about the damage and sediment accumulation on their property and the City has refused to fulfill its duties to maintain and keep up the storm sewer drainage ditch and retention basin all causing damage to the Plaintiffs. The storm sewer drainage ditch that is controlled by the City and the storm sewers on Valley Wood Drive are sources of silt, sediment and debris which has caused damages to Plaintiffs because of huge amounts of sediment, silt, and debris which have accumulated over time in the retention basin on Plaintiffs' property all causing flooding and destruction.

Plaintiffs sought damages in excess of $25,000, and their complaint included a demand for punitive damages and attorney fees.

{¶ 15} In response, the city and Ramm filed a partial motion to dismiss for failure to state a claim upon which relief can be granted as to plaintiffs' claim for

---

[1] The record does not contain a receipt or invoice for that alleged service.

trespass, and a motion to strike plaintiffs' demand for punitive damages and attorney fees. The trial court granted defendants' motion, dismissing plaintiffs' trespass claim against the city pursuant to Ohio's political subdivision immunity statute, R.C. 2744.01 et seq. The trial court also denied plaintiffs' claim for punitive damages and attorney fees and struck that claim from the complaint. On December 27, 2017, defendants filed an answer.

{¶ 16} In July 2018, defendants filed a motion for summary judgment, arguing that plaintiffs' claims for negligence (1) fail as a matter of law because they "purchased their property with notice that the [c]ity bears no responsibility for the creek in the Valley Woods Subdivision or the lake into which that creek empties"; (2) fail as a matter of law because "the [c]ity is immune from Plaintiffs' claims under R.C. 2744, et seq."; and (3) are barred by the statute of limitations. Plaintiffs opposed defendants' motion for summary judgment and argued there was evidence establishing that the storm water system is part of the municipal storm sewer system that the city is legally obligated to service and maintain.

{¶ 17} In September 2018, the trial court summarily granted defendants' motion for summary judgment. This appeal followed.

## II. Assignments of Error

{¶ 18} Plaintiffs raise three assignments of error for our review:

1. The trial court erred, as a matter of law, by granting summary judgment upon plaintiff[s']-appellants' claim against defendant-appellee, city of Independence, for negligent failure to maintain the municipal storm sewer system.

2. The trial court erroneously granted summary judgment in favor of defendant-appellee, Donald J. Ramm, upon plaintiff[s']-appellants' claim of individual liability for recklessness and bad faith.

3. The trial court's determination that punitive damages and legal fees cannot be recovered from employees of political subdivisions is erroneous as a matter of law.

## III. Law and Argument

### A. Plaintiffs' Negligence Claim Against the city of Independence

{¶ 19} Under their first assignment of error, plaintiffs argue that the trial court erred in granting summary judgment to the city of Independence on their claim for negligent failure to maintain the city's storm sewer system.

{¶ 20} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12. Also, the interpretation of a written contract presents a question of law that an appellate court reviews de novo. *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 10.

{¶ 21} Pursuant to R.C. 2744.02(B)(2), a political subdivision is liable for loss to property caused by the negligent performance of acts by their employees with

respect to proprietary functions of the political subdivision. R.C. 2744.01(G)(2)(d) defines a "proprietary function" to include "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]" Ohio courts have held that the decision to provide maintenance and repair to a sewer system does not involve the exercise of discretion that would reinstate immunity under R.C. 2744.03(A)(5). *Harris Farms, L.L.C. v. Madison Twp. Trustees*, 4th Dist. Scioto No. 17CA3817, 2018-Ohio-4123, ¶ 34; *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493. As this court stated in *Nelson*, "[d]ecisions involving the proper maintenance of [the city's] sewer or drainage system is a proprietary act, which is mandatory and not discretionary." *Id.* at ¶ 30.

{¶ 22} Plaintiffs argue that the city is not entitled to summary judgment upon the negligence claim because the city failed to maintain and repair its storm sewer system. Plaintiffs assert that the written instruments concern only a natural "creek" that existed when the land was developed, that the city may not evade its legal responsibility to maintain its storm sewer system, and that no immunity is available pursuant to R.C. 2744.01(G)(2)(d) and 2744.02(B)(2). On the other hand, the city argues that the language included in the purchase agreement and the plat map establish that plaintiffs purchased the property subject to the "creek," that plaintiffs are solely responsible for the "lake," and that plaintiffs agreed to indemnify and hold the city harmless. The city also asserts that it is immune from liability under R.C. 2744.01 et seq., because the creek is "a natural creek," the "lake" benefits only a few Valley Woods residents, the "creek" and the "lake" are not part of the city's

storm sewer system, and the proprietary-function exception for negligent maintenance of a sewer system does not apply. The city alternatively asserts that even if plaintiffs could prove the "creek" and "lake" are part of the city's storm sewer system, that plaintiffs' claim is really a claim for negligent design, construction, or reconstruction and that the discretionary defense under R.C. 2744.03(A)(5) applies.

{¶ 23} The central dispute in this matter hinges on whether the city's storm sewer system is involved. Under the clear language of the purchase agreement and the plat map, plaintiffs acknowledged and assumed the risk of erosion and drainage problems caused by the "creek," and they agreed to hold the city harmless and indemnify it against "any and all claims for erosion and drainage from said creek." However, plaintiffs never agreed under these instruments to be responsible for the city's storm sewer system.

{¶ 24} It is well settled that a municipality can be liable for the negligent maintenance of its sewers and that when a municipality does construct or maintain them, "'it becomes its duty to keep them in repair and free from conditions which will cause damage to private property.'" *Nelson*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, at ¶ 18, quoting *Doud v. Cincinnati*, 152 Ohio St. 132, 137, 87 N.E.2d 243 (1949); *see also Smith v. Euclid*, 8th Dist. Cuyahoga No. 107771, 2019-Ohio-3099, ¶ 20. Similarly, Ohio courts have held that a city has no duty to maintain a private drainage system on private property unless it has been established or used for public purposes. *Bibbs v. Cinergy Corp.*, 1st Dist. Hamilton No. C-010390, 2002-Ohio-1851; *see also State ex rel. Stamper v. Richmond Hts.*, 8th Dist.

Cuyahoga No. 94721, 2010-Ohio-3884, ¶ 31; *Caldwell v. Goldberg*, 43 Ohio St.2d 48, 330 N.E.2d 694 (1975), paragraph one of the syllabus. The city cites no authority to establish that a city can evade its mandatory duty to maintain a municipal storm sewer system.

{¶ 25} Further, insofar as the city attempts to recast the claim as one for negligent design, construction, or reconstruction, and to invoke the "discretionary" defense, there is no merit to this argument. Plaintiffs' claim is for the city's negligent failure to maintain the city's storm sewer system, which they assert includes the area of the storm sewer-drainage ditch easement and the retention basin. According to plaintiffs, "the City has refused to fulfill its duties to maintain and keep up the storm sewer drainage ditch and retention basin" which has led to "sediment, silt, and debris which have accumulated over time in the retention basin on Plaintiffs' property all causing flooding and destruction." Further, there is evidence in the record indicating that dredging the retention basin is required for proper maintenance. Plaintiffs are seeking damages arising from the city's alleged refusal to fulfill its legal duty to maintain and repair its storm sewer system. Therefore, the defense outlined in R.C. 2744.03(A)(5) is not available to the city.

{¶ 26} The record in this case presents genuine issues of material fact concerning whether the storm sewer-drainage ditch easement area and/or the retention basin are part of the city's storm sewer system and, if so, as to whether the city exercised ordinary care in maintaining and repairing the storm sewer system. There is evidence upon which it could be determined that the storm sewer-drainage

ditch easement area, storm sewer pipes, and retention basin in the subdivision are all part of the city's storm sewer system.

{¶ 27} The evidence reflects that the city possesses a storm sewer-drainage ditch easement over the channel that runs into the retention basin on plaintiffs' property. A drainage ditch can be part of a city's storm sewer system. *See, e.g., State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 733-734, 654 N.E.2d 1258 (1995). Additionally, storm water is directed into the retention basin from the storm sewer that runs under Valley Woods Drive in the city's right-of-way and stops at the headwall on plaintiffs' property. Don Elewski, the former city engineer, testified in his deposition that the retention basin is part of the drainage system and that it serves "to accept the storm water from the subdivision[.]" Elewski Depo., p. 40, 47. He confirmed there is an inflow pipe into the retention basin from the storm sewer in the subdivision and an outflow pipe that directs water out of the retention basin to the other side of the street when the level gets too high. *Id.* at p. 39-40. He also agreed that the retention basin needs to be dredged "when it becomes obvious that it's filling up with debris." *Id.* at p. 41.

{¶ 28} Dave Snyderburn, the city's technical service director, testified in his deposition that if there was any problem with the retention basin that impeded water flow, it could affect the storm water drainage in the city in general. Snyderburn Depo., p. 24. He recognized that the storm sewer-drainage ditch and the retention basin are part of the storm system that is in the city of Independence. *Id.* at p. 51-52. He stated that the city has done work in the storm sewer-drainage

ditch easement area to remove trees and debris impeding the flow of water.  *Id.* at p. 39.  He also indicated that the city had dredged the retention basin more than once.  *Id.* at p. 52.  Donald Ramm, the current city engineer, testified that the city would be responsible to maintain the headwall in the retention basin because it protects the city's storm sewer pipe.  Ramm Depo., p. 123.

{¶ 29} Plaintiffs' expert, William C. Vondra, Jr., a professional engineer, opined in his affidavit that "[t]he storm sewer drainage ditch and the creek that flows through it may have once been a 'natural channel' but it ceased being natural when it became part of the City's storm sewer drainage system" and that "the proximate cause of the damage to the Economus property was the negligence on the part of the City for its lack of inspection, repair and maintenance of the storm sewer drainage ditch easement area and the basin."  Vondra Aff., ¶ 17, 30.

{¶ 30} When construing this evidence in a light most strongly in favor of plaintiffs, we find there are genuine issues of material fact that prelude summary judgment on the negligence claim against the city.  This court's prior decisions in *Fink v. Twentieth Century Homes, Inc.*, 8th Dist. Cuyahoga No. 99550, 2013-Ohio-4916, and *Stovicek v. Parma*, 8th Dist. Cuyahoga No. 102699, 2015-Ohio-5147, are distinguishable upon their facts.  In those cases, there was no evidence upon which it could be determined that the watercourse at issue was maintained by the city or used as part of the city's storm sewer system.  In this case, there is evidence that the storm sewer that runs under Valley Woods Drive stops at a headwall, which is maintained by the city, and that storm water is directed into the

retention basin on plaintiffs' property through an inflow pipe and exits through an outflow pipe back to the city's right-of-way. The city also possesses a "storm sewer-drainage ditch easement" as well as an easement over the retention basin to make sure storm water drainage flows unimpeded, and the city has performed maintenance in these areas in the past. While the circumstances in this case may or may not rise to the level of a public storm sewer system, viewing the evidence in the light most favorable to plaintiffs, there is a genuine issue of material fact as to whether the storm sewer-drainage ditch easement area and retention basin are part of the city's storm sewer system. If so, then the trial court will have to consider if the city is entitled to sovereign immunity as a matter of law.

{¶ 31} If the trier of fact determines the city's storm sewer system is not involved, then the contractual terms would control. Plaintiffs offer no evidence that would suggest they did not freely enter into the purchase agreement and have made no allegations of fraud, duress, or coercion. In fact, in his deposition, Dale Economus stated that he was aware of the creek and retention basin when he purchased the property and admitted that he even held off on signing the purchase agreement because he wanted to take "a better look at" the retention basin. He also admitted that he was aware of the hold-harmless and indemnity clause in the purchase agreement. We do not find the clause in the purchase agreement to be ambiguous.

{¶ 32} Nonetheless, plaintiffs argue that the city was not a party to the purchase agreement and, therefore, cannot enforce the hold-harmless and

indemnity clause contained in the purchase agreement. "Courts generally presume that a contract's intent resides in the language the parties chose to use in the agreement." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992). "Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party. Generally, the parties' intention to benefit a third party will be found in the language of the agreement." *Id.* "The third party need not be named in the contract, as long as he is contemplated by the parties to the contract and sufficiently identified. Nor need the third party accept the contract, or even acknowledge its existence." *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 196, 299 N.E.2d 295 (8th Dist.1973).

{¶ 33} In *Huff,* the Ohio Supreme Court adopted the "intent to benefit" test to determine whether a party is an intended beneficiary of a contract. Under that test,

> "if the promisee * * * intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract."

*Huff* at ¶ 11, citing *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988), quoting *Norfolk & W. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir.1980).

**{¶ 34}** Here, the city is explicitly named in the purchase agreement, and the purchase agreement and plat map reflect the parties' intent to provide a benefit to the city, namely, to hold the city harmless and indemnify it against any claims based on erosion or drainage problems from the "creek." Accordingly, the city is an intended third-party beneficiary. However, we reiterate that while plaintiffs acknowledged and assumed the risk associated with the "creek," nothing in the language of the instruments obligated them to be responsible for maintaining the city's storm sewer system. The city has a mandatory duty to inspect, maintain, and repair a municipal sewer system.

**{¶ 35}** Finally, we do not find that the claim against the city is barred by the two-year statute of limitations. R.C. 2744.04(A) provides the following:

> An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought within two years after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code. The period of limitation contained in this division shall be tolled pursuant to section 2305.16 of the Revised Code. This division applies to actions brought against political subdivisions by all persons, governmental entities, and the state.

**{¶ 36}** Arguably, the cognizable event that led to the damage to plaintiffs' property was the heavy rainstorm of May 12, 2014. Therefore, we are unable to conclude that the action is barred by the statute of limitations.

**{¶ 37}** For the foregoing reasons, we sustain the first assignment of error.

## B. Plaintiffs' Negligence Claim Against Ramm

{¶ 38} Under their second assignment of error, plaintiffs argue that the trial court erred in granting summary judgment to Ramm on their claim for individual liability for recklessness and bad faith.

{¶ 39} "'For the individual employees of political subdivisions, the analysis of immunity differs.'" *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 36, quoting *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9. Relevant in this matter, under R.C. 2744.03(A)(6), an employee of a political subdivision is immune from individual liability unless "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

{¶ 40} Here, plaintiffs argue that the exception to immunity under subsection (A)(6)(b) applies. Accordingly, we must determine "whether, based on the evidence in the record, reasonable minds could conclude that [the individual employee of the political subdivision] acted 'with malicious purpose, in bad faith, or in a wanton or reckless manner' so as to preclude immunity.'" *Argabrite*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, at ¶ 15, quoting R.C. 2744.03(A)(6)(b). These are "rigorous standards that will in most circumstances be difficult to establish[.]" *Agrabrite* at ¶ 8.

{¶ 41} "'Malicious purpose' is the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Jones v. Norwood*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, ¶ 42. "'Bad faith'

evinces a 'dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another.'" *Id.*, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90-91, 658 N.E.2d 814 (1st Dist.1995). "Wanton misconduct" requires "'the failure to exercise *any* care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result.'" (Emphasis sic.) *Argabrite* at ¶ 8, quoting *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, at paragraph three of the syllabus. "Reckless conduct" is "conduct 'characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.'" *Argabrite* at ¶ 8, quoting *Anderson* at paragraph four of the syllabus.

{¶ 42} Plaintiffs argue that there are genuine issues of material fact as to whether Ramm acted in a reckless manner or in bad faith, stating that "every relevant decision that Defendant Ramm made in his capacity as the City Engineer with regard to the retention pond * * * was calculated and deliberate." Plaintiffs also state, "[r]easonable jurors could find that he fully appreciated that the City of Independence was legally obligated to repair and maintain the municipal storm sewer system, but decided to defy the law as some sort of misguided cost-saving scheme." However, Ramm stated that he did not harbor any personal animosity toward plaintiffs. He testified that he believed the plaintiffs were responsible for

maintaining the retention basin and that the creek was a natural waterway that was not part of the city's storm sewer system.

{¶ 43} Viewing the evidence in the light most favorable to plaintiffs, no reasonable juror could conclude that Ramm acted with malicious purpose, in bad faith, or in a wanton or reckless manner, as those terms are legally defined. Accordingly, he is entitled to immunity under R.C. 2744.03(A)(6)(b). We overrule plaintiffs' second assignment of error.

### C. Punitive Damages and Attorney Fees

{¶ 44} In their third assignment of error, plaintiffs argue that the trial court erred in dismissing their claim for punitive damages and attorney fees. We have already determined that Ramm cannot be held individually liable and is entitled to summary judgment in this matter. The only remaining claim is against the city.

{¶ 45} R.C. 2744.05 provides in relevant part:

Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function:

(A) Punitive or exemplary damages shall not be awarded.

{¶ 46} "R.C. 2744.05(A) prohibits the award of punitive damages against a political subdivision." *Cramer*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, at ¶ 31. Accordingly, any error by the trial court in striking the claim for punitive damages and attorney fees was harmless, and we overrule plaintiffs' third assignment of error.

{¶ 47} Judgment affirmed in part, reversed in part; case remanded.

It is ordered that appellants and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

MARY J. BOYLE, P.J., CONCURRING IN PART AND DISSENTING IN PART WITH SEPARATE OPINION:

{¶ 48} I agree with the majority that the trial court properly granted summary judgment to Ramm on plaintiffs' claim for negligence and to the city of Independence and Ramm on plaintiffs' claim for punitive damages and attorney fees. I respectfully dissent in part and concur in part, however, because I disagree with the majority that there are genuine issues of material fact that preclude awarding the city of Independence summary judgment on plaintiffs' negligence claim. It is my view that the record establishes that there are no genuine issues of material fact and that the moving party, the city of Independence, is entitled to judgment as a matter of law, and that reasonable minds can come to but one

conclusion, and that conclusion is adverse to the Economuses. Thus, I would affirm the trial court fully.

## A. Plaintiffs' Negligence Claim Against Independence

{¶ 49} The majority finds that "[t]he record in this case presents genuine issues of material fact concerning whether the storm sewer-drainage ditch easement area and/or the retention basin are part of the city's storm sewer system and, if so, as to the whether the city exercised ordinary care in maintaining and repairing the storm sewer system." The majority finds that there is evidence that the easement area and retention basin located on plaintiffs' property are part of the city's storm sewer system. I disagree.

{¶ 50} In this case, the plat contained two separate provisions, the "Creek Acceptance" provision and the note, which stated that the Economuses agreed to "indemnify and hold the city of Independence harmless from any and all claims for erosion and drainage from said creek" and that the retention basin on sublot No. 6 was "the primary maintenance responsibility" of the Economuses. Further, the purchase agreement between the Economuses and Valley Woods Limited Partnership stated:

> It is understood that if a creek affects the subject property and the property may be subject to erosion and drainage problems as a result and the property owner by the acceptance hereof hereby acknowledges same and assumes the risk thereof and agrees to indemnify and hold the City and Seller harmless from any and all claims for erosion and drainage from said creek.

{¶ 51} The language of both instruments is clear: by purchasing the property, the Economuses acknowledged and assumed the risk of erosion and drainage problems posed by the creek and were required to hold the city harmless and indemnify it from any of such problems. In this case, the Economuses have set forth claims arising from erosion and drainage. Their complaint alleges that they suffered damage as a result of debris and sediment coming upstream from the creek and accumulating in the retention basin on their property and the "shallowness" of the retention basin.

{¶ 52} While plaintiffs acknowledge that "there may have been such a stream when the property was being developed," they argue that because the creek is no longer "natural," the clauses no longer apply. Plaintiffs argue that due to the "increased flow rates," the "creek" became part of the city's sewer system, for which they are not responsible under the plat map's and purchase agreement's provisions.

{¶ 53} I disagree. It is clear that in entering the purchase agreement, the Economuses understood that they were taking responsibility for the basin on their property and whatever the effects the creek might have on that basin. The purchase agreement does not show that the Economuses would not be responsible for it based on "increased flow rates." In fact, the Economuses' argument runs contrary to the plain language of the plat map and purchase agreement as well as to the clear intent of the parties to the purchase agreement. Therefore, the clauses are not "immaterial" as plaintiffs claim and are still enforceable.

{¶ 54} I agree with the majority that the city is a third-party beneficiary to the purchase agreement and has the ability to enforce the indemnity clause contained in that agreement.

{¶ 55} I agree with the majority that "plaintiffs offer no evidence that would suggest they did not freely enter into the purchase agreement and have made no allegations of fraud, duress, coercion, or overreaching that would support a point otherwise." In fact, in his deposition, Dale stated that he was aware of the creek and retention basin when he purchased the property and admitted that he even held off on signing the purchase agreement because he wanted to take "a better look at" the retention basin. He also admitted that he was aware of the hold-harmless and indemnity clause in the purchase agreement. When asked about the clause pertaining to the creek in the purchase agreement, Dale stated that he concluded it "was probably not enforceable" because the "if" rendered the clause ambiguous. Dale stated that he did not seek legal advice concerning the clause.

{¶ 56} While Dale Economus may have honestly believed the clause in the purchase agreement was ambiguous, I, like the majority, do not. The language is clear, and under that language, plaintiffs are required to hold the city harmless and indemnify it on its claims in this case.

{¶ 57} Because it finds that summary judgment was improper on the negligence claim against the city of Independence, the majority does not address plaintiffs' argument that defendants failed to cite case law "recognizing that political subdivisions can indeed evade their statutory obligations to their citizens through

such contracts of adhesion" and "anticipatory disclaimers of liability are generally viewed with disfavor." However, I believe that plaintiffs waived these arguments by not raising them below in their motion in opposition to summary judgment. *See Jacubenta v. Ranch*, 8th Dist. Cuyahoga No. 98750, 2013-Ohio-586, ¶ 18 ("CR Cleveland did not pursue any argument regarding whether the Policy was ambiguous in the trial court, and so it has waived this argument on appeal.").

{¶ 58} Further, the majority also does not address plaintiffs' argument that because Independence "had maintained and dredged the basin for almost 20 years and never sought assistance, financial or otherwise from the Plaintiffs, the [c]ity is barred by the doctrine of waiver from denying its ongoing duty imposed by R.C. 2744 et seq. to inspect, maintain, and repair the retention basin and storm sewer drainage ditch easement area"; however, plaintiffs raised that argument in their brief in opposition to summary judgment and not on appeal. Therefore, I would find that they have waived that argument. I would also find that any action that the city took in order to assist the Economuses was not the result of a legal duty, but instead, in the nature of good offices. *See Johnson v. Wickliffe*, 11th Dist. Lake No. 2003-L-159, 2005-Ohio-1687, ¶ 17 ("It is our view that any involvement between the city engineer's office and appellants was in the nature of good offices and not as the result of any legal duty.").

**B. Plaintiffs' Remaining Claims**

{¶ 59} Turning to plaintiffs' remaining claims — a claim of negligence against Ramm and a claim for punitive damages and attorney fees against Ramm

and the city of Independence — I agree with the majority that the trial court's grant of summary judgment to Ramm and the city of Independence on those claims was proper. I would point out, though, that based on my belief that the city of Independence was entitled to summary judgment on plaintiffs' negligence claim, plaintiffs' third assignment of error regarding their claim for punitive damages and attorney fees would be moot. *See Jones v. Norfolk S. Ry. Co.,* 8th Dist. Cuyahoga No. 84394, 2005-Ohio-879, ¶ 29 (finding the question of punitive damages moot because it found that the trial court did not err in awarding summary judgment to appellees).

{¶ 60} Accordingly, I concur in part and dissent in part with the majority's opinion. Respectfully, I would affirm the trial court in total.